**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY MORGAN,<br><br>Plaintiff,<br><br>v.<br><br>COVETRUS, INC., PHILIP A. LASKAWY, DEBORAH G. ELLINGER, PAUL R. FONTEYNE, SANDRA L. HELTON, MARK J. MANOFF, EDWARD M. MCNAMARA, STEVEN PALADINO, SANDRA E. PETERSON, RAVI SACHDEV, SHARON WIENBAR, and BENJAMIN WOLIN,<br><br>Defendants. | Case No. ____________<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Anthony Morgan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Covetrus, Inc. ("Covetrus" or the "Company") and the members of Covetrus' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell the Company to Clayton, Dubilier & Rice, LLC ("CD&R") and TPG Global, LLC ("TPG") (the "Proposed Transaction").

2. On May 24, 2022, Covetrus entered into an Agreement and Plan of Merger with subsidiaries of investment funds managed by CD&R, Corgi Bidco, Inc. ("Parent") and Corgi Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement"). CD&R VFC Holdings, L.P. ("CD&R VFC Holdings"), an affiliate of CD&R, owns approximately 24.03% of the Company's outstanding shares. Pursuant to the terms of the Merger Agreement, CD&R and TPG will acquire the shares of Covetrus that CD&R does not already own for $21.00 per share in cash. Affiliates of CD&R and TPG have entered into equity commitment letters with Parent pursuant to which they have agreed to provide equity commitments of approximately $1.604 billion.

3. On September 13, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Covetrus stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); (iii) potential conflicts of interest faced by the Company's additional financial advisor, Lincoln International ("Lincoln"); and (iv) the process leading to the Proposed Transaction.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Covetrus stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Covetrus stockholders to vote on the Proposed Transaction is currently scheduled for October 11, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Covetrus' other shareholders to make an informed

decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Covetrus' common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Covetrus common stock.

10. Defendant Covetrus is a Delaware corporation, with its principal executive offices located at 7 Custom House Street, Portland, Maine 04101. Covetrus' shares trade on the Nasdaq Global Select Market under the ticker symbol "CVET."

11. Defendant Philip A. Laskawy has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Deborah G. Ellinger has been a director of the Company at all relevant times.

13. Defendant Paul R. Fonteyne has been a director of the Company at all relevant times.

14. Defendant Sandra L. Helton has been a director of the Company at all relevant times.

15. Defendant Mark J. Manoff has been a director of the Company at all relevant times.

16. Defendant Edward M. McNamara has been a director of the Company at all relevant times.

17. Defendant Steven Paladino has been a director of the Company at all relevant times.

18. Defendant Sandra E. Peterson has been a director of the Company at all relevant times.

19. Defendant Ravi Sachdev has been a director of the Company at all relevant times.

20. Defendant Sharon Wienbar has been a director of the Company at all relevant times.

21. Defendant Benjamin Wolin has been President, Chief Executive Officer and a director of the Company at all relevant times.

22. Defendants identified in paragraphs 11-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### **Background of the Company**

23. Covetrus is a global animal-health technology and services company dedicated to supporting the companion, equine, and large-animal veterinary markets. The Company's mission is to provide the best products, services, and technology to its customers across the globe, so they

can deliver exceptional care to their clients when and where it is needed. Covetrus engages in the sale of animal-health consumable products, including proprietary and Covetrus branded products, small equipment, laboratory products, large equipment, equipment repair services, branded and generic pharmaceuticals, vaccines, surgical products, diagnostic tests, infection-control products, parasiticides, and vitamins and supplements to wholesale and retail customers. The Company also offers value-added solutions, such as inventory management and e-commerce, as well as continuing education services for practitioners, as well as practice management software, data-driven applications, client communications tools, and related services, among other things.

**The Proposed Transaction**

24. On May 25, 2022, Covetrus announced that it had entered into the Proposed Transaction, stating, in relevant part:

> PORTLAND, Maine--(BUSINESS WIRE)--Covetrus® (NASDAQ: CVET) ("Covetrus" or the "Company"), a global leader in animal-health technology and services, today announced that it has entered into a definitive agreement pursuant to which funds affiliated with Clayton, Dubilier & Rice ("CD&R"), a global private investment firm, and TPG Capital, the private equity platform of global alternative asset management firm TPG ("TPG"), will acquire all outstanding shares of Covetrus common stock not already owned by affiliates of CD&R for $21.00 per share in cash, representing an enterprise value of approximately $4 billion.
>
> CD&R and its affiliates currently beneficially own approximately 24% of the Company's outstanding shares of common stock. The transaction delivers significant value to Covetrus' shareholders and represents a 39% premium to Covetrus' 30-day volume weighted average price per share as of the unaffected stock price as of May 13, 2022.
>
> The proposed transaction has been unanimously approved by a transaction committee of independent directors of the Board of Directors of Covetrus (the "Transaction Committee"). The Board of Directors of Covetrus has unanimously approved the proposed transaction on the recommendation of the Transaction Committee.
>
> "This transaction is an important milestone for our company, shareholders, employees, customers and partners," said Benjamin Wolin, Covetrus' President and Chief Executive Officer and a member of its Board of Directors. "Not only does

this deal provide compelling value for our existing shareholders, it allows Covetrus to continue its mission to drive positive outcomes – both business and healthcare – for veterinarians across the globe. We appreciate CD&R's support and their continued commitment to our company and the global veterinary community."

"Covetrus has undergone a true transformation since our initial 2015 investment in its predecessor Vets First Choice, growing from $55 million in revenue focused primarily on online pharmacy in the US to a leading global provider of animal health services with more than $4.6 billion in revenue," said Sarah Kim, Partner at CD&R. "We are excited to have this opportunity to grow our investment in Covetrus and to do so in partnership with TPG and management," added Ravi Sachdev, Partner at CD&R.

"Covetrus offers a dynamic portfolio of leading distribution and technology solutions to veterinarians across the globe," said Jeff Rhodes, Co-Managing Partner at TPG Capital. "The company is at an important stage in its ongoing evolution, and we look forward to partnering with management and CD&R to further its leadership in the growing animal health space," continued Kendall Garrison, Partner at TPG Capital.

The transaction is expected to close in the second half of 2022. Completion of the transaction is subject to certain regulatory approvals and the satisfaction of other customary closing conditions, including the approval of Covetrus' shareholders. The transaction will be financed through a combination of cash funded by investment funds affiliated with CD&R and TPG Capital, as well as committed debt financing.

Upon completion of the transaction, Covetrus will become a private company and will no longer be publicly listed or traded on NASDAQ. Covetrus' management team, including Benjamin Wolin, President and Chief Executive Officer, is expected to continue to lead the Company. Covetrus plans to maintain its headquarters in Portland, Maine, and will continue to operate under its current brands.

**Advisors**

Goldman Sachs & Co. LLC is serving as lead financial advisor to Covetrus. Lincoln International LLC is also serving as financial advisor to Covetrus. Weil, Gotshal & Manges LLP is serving as legal counsel.

Deutsche Bank Securities Inc., UBS Investment Bank, BMO Capital Markets and Mizuho Securities USA LLC have provided committed debt financing for the transaction and are serving as financial advisors to CD&R and TPG Capital. Debevoise & Plimpton and Ropes & Gray are acting as legal counsel for CD&R and TPG Capital.

**<u>The Materially Incomplete and Misleading Proxy Statement</u>**

25. On September 13, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Covetrus stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Goldman; (iii) potential conflicts of interest faced by the Company's additional financial advisor, Lincoln; and (iv) the process leading to the Proposed Transaction.

*<u>Material Misrepresentations and/or Omissions Concerning Covetrus' Financial Projections</u>*

26. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

27. For example, with respect to the Company's financial projections, the Proxy Statement fails to disclose the line items underlying the calculation of (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

*<u>Material Misrepresentations and/or Omissions Concerning Goldman's Financial Analyses</u>*

28. The Proxy Statement fails to disclose material information concerning Goldman's financial analyses.

29. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal year unlevered free cash flow; (ii) the Company's terminal values; (iii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.5%; and (iv) the Company's fully diluted outstanding shares.

30. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the Company's next twelve months ("NTM") EBITDA estimates used in the analysis; (ii) the Company's projected net debt as of December 31, 2022, 2023, and 2024; (iii) the inputs and assumptions underlying the discount rate of 11.7%; and (iv) the Company's fully diluted outstanding shares.

31. With respect to Goldman's *Selected Precedent Transactions Analysis* and *Selected Public Company Comparables* analysis, the Proxy Statement fails to disclose the individual financial metrics for each of the selected transactions and companies analyzed by Goldman, respectively.

32. With respect to Goldman's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions analyzed; and (ii) the individual premiums observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning Lincoln's Potential Conflicts of Interest*

33. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's additional financial advisor, Lincoln.

34. Specifically, the Proxy Statement fails to disclose the terms of Lincoln's engagement, including: (i) the amount of compensation Lincoln has received or will receive in connection with its engagement; (iii) the amount of Lincoln's compensation that is contingent upon consummation of the Proposed Transaction; and (iii) whether Lincoln has performed any services for the Company, CD&R or TPG, and their respective affiliates, in the prior two years and, if so, the nature of the services performed and amount of compensation received.

*Material Misrepresentations and/or Omissions Concerning the Process Leading to the Proposed Transaction*

35. The Proxy Statement fails to disclose material information concerning the process leading to the Proposed Transaction.

36. For example, the Proxy Statement fails to disclose whether any of the standstill provisions in the confidentiality agreements the Company entered into with parties during the sale process were "don't-ask, don't-waive" standstill provisions that are still in effect and presently precluding a party from submitting a topping bid for the Company.

37. In sum, the omission of the above-referenced information renders statements in the "Certain Financial Projections Utilized in Connection with the Merger," "Opinion of Goldman Sachs & Co. LLC," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Covetrus will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Covetrus

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Covetrus is liable as the issuer of these statements.

40. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

41. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

43. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

44. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**

**Claims for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Covetrus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Covetrus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

50. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Covetrus, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: September 21, 2022

**ACOCELLI LAW, PLLC**

By *\/s/ Richard A. Acocelli*

Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*